2313531 Roy Moore v. Senate Majority PAC Good morning, Your Honors, and may it please the Court, Abakana on behalf of Appellant S.M.P. The fundamental premise of the actual malice standard is that the First Amendment requires breathing space in order to allow for robust political discourse, such that a false statement alone does not amount to defamation. Now, there might be hard cases that test the boundaries of that standard, but given the undisputed facts here, this case is decidedly not one of them. The undisputed facts here are that in 2017, then-Senate candidate Roy Moore was at the center of a firestorm of news stories reporting that he sexually preyed upon teenage girls while in his 30s, pursuing them at the local mall, in their high school classrooms, and even in the courthouse where he worked as a DA. The undisputed facts under the District Court's findings, both in this case and in the related case of Moore v. Lowe, are that the following statements could not lead to liability for defamation. That Moore sexually preyed on underage girls at the mall. That Moore initiated a sexual encounter with a girl as young as 14 when he was 32. And that Moore was accused of hitting on Wendy Miller specifically, of being a sexual predator and engaging in sexual misconduct toward Miller, and of making inappropriate sexual advances towards Miller. So in light of these undisputed facts, Your Honors, why are we here? And the answer to that is a single pronoun. As the District Court explained, Moore's entire case rises and falls on SMP's use of the pronoun one to purportedly link Miller to the previous slide in their ad regarding the mall ban. But even setting aside for the moment all of the reasons why Moore fails to offer any evidence that SMPs had a subjective intent, and regardless of whether the ad could have been more precisely worded to say that Moore approached one young girl instead of one he approached. Ultimately, the implication that Moore ascribes is substantially true. Because the gist or the sting of the ad as a whole is accurate. The gist of the ad is that it was widely reported that Moore had a troubling pattern of making sexual advances towards teenage girls, including girls as young as 14. This takeaway is entirely true. Even Moore does not dispute it. In fact, Moore's response brief in this case all but concedes it. On page 22... Why does he dispute that he solicited sex from Ms. Miller? He disputes the literal falsity of the implication. He does not dispute the gist, which is the material falsity question for this Court to make an actual malice determination. On page 22 of his response brief, he writes that the true sting of the ad was, quote, to accuse Judge Moore of having been actually banned from the mall for soliciting sex from young girls, and that one of those girls was only 14. But here the false statement is that Moore solicited sex from Ms. Miller. The pleaded truth is that Moore only told Ms. Miller that she was pretty. How is that not materially false? Well, according to Moore's own concession in the response brief, when you're looking at the gist of the ad as a whole, which is what the material falsity inquiry looks at, not just at the particular false implication that is alleged here, the gist of the ad as a whole is that Moore was actually banned from the mall for soliciting sex from young girls. That has already been established as not defamatory, and it is beyond dispute that Moore was credibly accused of soliciting a sexual act from a 14-year-old girl, even if that 14-year-old wasn't Wendy Miller. Contrary to Moore's suggestion, the gist of the ad does not hinge on whether the 14-year-old that he approached was working at the mall, like Wendy Miller, or was sitting outside the courtroom of her parents' custody hearing, like Lee Corfman. The gist of the ad is the repeated pattern of sexually predatory behavior toward teenage girls. That is what is accurately reported in the ad. That is the implication of the ad. And even Moore agrees that that implication at least was fully supported by the record that supported the ad. Ultimately, Your Honors, Moore's claim is one of imprecise word choice. But courts have made clear that a defendant cannot be found liable for actual malice based on his use of imprecise language or simply because they could have written a clearer sentence. Here, basically, Moore says, you should have said that Moore approached one young girl instead of one he approached. And that is not where the lie is when it comes to the very demanding actual malice standard. So looking at actual malice, can you explain how there's not at least an inference that your client knew or recklessly disregarded that the implication about Moore was false when there was no source claiming that he solicited sex from Ms. Miller and Ms. Miller, in fact, testified at trial that he did not solicit sex from her? Well, first of all, Your Honor, it is Moore's affirmative burden, of course, to prove that actual malice. And he falls far short of that burden. The only evidence that Moore is able to provide is the implication of the ad itself and the fact that the jury maybe or the judge did not believe the testimony by SMP. But that, as a matter of black-letter law, does not mount to actual malice. And in Bowes, the United States Supreme Court evaluated very similar facts, very similar evidence, where the district court concluded that there was actual malice based on two things, that no reasonable reader could have understood the sentence at issue as describing the sound accurately, and that the author's testimony was, quote, incredible. But in Bowes, the Supreme Court reversed the district court for failure to identify any independent evidence that the writer actually realized there was an inaccuracy or entertained serious doubts of its truthfulness. In Newton, the Ninth Circuit applied Bowes to reverse a district court ruling of actual malice in a defamation-by-implication case. And that, too, was similarly based on the clear and inescapable impression that the court found from the publication and the disbelief of the defendant's witnesses. So in light of this, so you are saying that even though your clients testified, we did not intend this defamatory implication, even if your clients were completely disbelieved at trial, that does not create an implication that they were lying and, in fact, support his cause of action for actual malice. He needs more than that. It's not just that your clients' statements were disbelief. He needs far more than that, Your Honor, yes. So he has the ad itself. Is there any other evidence that he could point to of actual malice? There is absolutely no evidence in the record that he was able to produce that points to my client's subjective intent and understanding of the ad and when it actually produced it. Your client, and I think you made this very clear from the record, before the ad was run, went and did a fact-check on all of the parts of the ad except for, if we take the sentence to mean, he solicited sex from Ms. Miller. That was not fact-checked. Well, let me be very clear, Your Honor. The Trial Exhibit 162, which is the fact-checking document, is an extensive, line-by-line, statement-by-statement fact-check for the entire ad, including the implication that issue here. So there's not something missing as far as the fact-checking document was concerned. But even if the Court does not believe that the fact-checking was sufficient, the existence of that document, far from being evidence in favor of actual malice, only disproves actual malice for at least two reasons. One, it demonstrates S&P's subjective intent to ground each and every statement in the public reporting. And two, it demonstrates S&P's subjective understanding of the ad itself, including five separate statements on different slides, expressly sourced to different articles, with direct quotes from each article, and employing a different verb in each one to describe Moore's actions. I guess the one statement, which is what we're fighting over here, defamation by implication, that the implication was, because of the pronoun choice, that he solicited sex from Ms. Miller. You're not suggesting that that was fact-checked, or that there was any source that corroborated that implication? The implication, which was not something that my client actually intended to imply at all, no, there was not a reading between the lines. Instead, there was a factual line-by-line assessment of each and every statement. That proves my client's subjective intent was never to defame and never to do anything false, let alone reckless. That kind of fact-checking is totally antithetical to any kind of reckless disregard for the truth. In fact, this Court's most recent ruling in Lovingood, I think, only confirms and is more persuasive on this fact. In Lovingood, there, too, the producers fact-checked their statements against their original sources, and there, too, the plaintiff argued that that fact-checking was insufficient. It didn't appropriately identify a discrepancy. But the Court held, but said that even if we accept Lovingood's view of what fact-checking discovery should have reasonably done, the standard for recklessness is much higher. The Court noted, this Court noted, that it is, actual malice is not this objective standard about what a reasonable producer should have done, but rather it is a very subjective standard that looks at the actual, real, subjective suspicions of whether the, subjective viewpoint of the speaker to see whether they had an actual serious doubt as to the veracity. In other words, this Court in Lovingood made clear that the standard is not what the defendant should have known based on the fact-checking had they done a more complete or accurate fact-checking, but actually what the defendant did know. And here, there was absolutely zero evidence, no documentation, no e-mail correspondence, and certainly no conflicting testimony to suggest that anybody at SMP had any reason to think that anything that they were saying in this ad was false or materially false. With the remainder of my time for rebuttal, thank you, Your Honors. Mr. Wittenbrink. Good morning, Your Honors. May it please the Court, Jeff Wittenbrink here for Roy Moore, plaintiff at Pele. So, to start with the questions that were asked by you, Judge Branch, the fact of the matter is that the plaintiff did not know that Ms. Estes had a sexual proposition to a minor. That's what this case is about. That they absolutely knew that wasn't true because it wasn't in the source material that they so carefully checked. They said they went line by line, and that's what this testimony of Ms. Estes was. They went line by line, but that holistically it was also true. What they do, Judge, in order to come up with this conclusion that it's holistically true, is they conflate reports that were uncorroborated from women who came forward after 40 years that said they had never told anybody about these issues. That's in those articles that are in evidence. They'd never told anybody to say that there was a moral ban based on this specific incident where he asked Santa's helper for sex. There's a huge... But her point is, and she's argued this, is if you look at our fact-checking document, and it is so extensively fact-checked, it supports their position that they were trying their best to not have anything defamatory, and because this is a defamation by implication case, they just didn't even realize that was an implication. Except that, Judge, that actually is a credibility call. And the fact of the matter is, when Ms. Estes was talking, you know, they did view the ad. They watched the ad, and if your honors look at the ad, it is impossible for the average person not to come to the conclusion that Wendy Miller was, quote, one of the girls that he approached, one he approached. All right, so Ms. Khanna's argument is that it may, even if it's literally false that he elicited Ms. Miller for sex, that's not enough because, one, it's not a material distinction from all the information that was out there, and two, there's no evidence of actual malice. Well... Independent evidence. So even if the jury found the PAC's witnesses not credible, that's not enough to get you to actual malice. What's your answer to that? Well, the independent evidence of actual malice is the way that they put the ad together. Just like in the Masson case, where you have quotes from an author in that case that they totally misstated and misused and made up a totally different story with those quotes. In this case, they took two quotes, separate quotes, mashed them together to say something... There were no different slides, right? No, see, that's a misnomer that only comes about when you only read the briefs. There were no slides. This is a video that's scrolling through. They show these different pictures. It's the next statement in a series, but it's a continuous narrative. You have to look at the pacing. You have to look at the flow. I had asked permission to bring the video for Your Honor's review before this oral argument. It's in the record as Joint Exhibit 1, and it's imperative that you look at it because no person, no person that speaks English... Joint Exhibit 1. They had an exhibit. We made an exhibit. So no person viewing that ad can conclude anything other than what it says, which is that he solicited Wendy Miller for sex. Now, beyond that, beyond that, Judge, if I may... I'm sorry. One of the ads said, Gadsden locals say Moore's predatory behavior toward teen girls at the mall was not a secret. One he approached was 14 and working as a Santa's helper. Would that have been actionable? So the idea of... There are words that are used in the articles that are vague, that are subjective. Predatory behavior... I understand, but what you can't do is take that word and turn that into solicitation for sex. You know, he told Wendy Miller that she was pretty. They brought an expert to say that was a solicitation for sex. That's what they told the jury. The different behaviors that are actually categorized in the record are not solicitations for sex. The things that they said that he did. And so Your Honors have to distinguish those things. I'm sorry. I'm trying. I'm trying. If it had been a direct... Excuse me. Allergies. If it had been a direct quote from the article that talked about predatory behavior and then said one he approached was 14 and working as Santa's helper, would that be actionable? I think that would not be actionable if they didn't include... In other words, maybe they interrupted those things. They interrupted the first broad statement by um, um, Mr. Um, the first broad statement saying that he was, he was actually banned for soliciting sex from young girls at the mall. They separated that statement with something else to qualify what was actually said to Wendy Miller. Then perhaps... Your entire case is based on the phrase solicitation, soliciting sex or solicitation for sex. Is that right? It's a very...  That's very false. Yes. And that's a very important distinction, Judge. In other words, to describe that from the article, that would have been, that would not be actionable in your view. Is that right? Okay. I'm trying to understand how that would be. Something like predatory behavior. Yeah. That would not be... Well, approaching teens for sex even may have been actionable because... I do see your point, Judge. But... All the articles that came out before the ad had reports of Mr. Moore approaching teenagers, engaging in predatory behavior, grooming them for sexual encounters. So that, that's not actually what the articles say, Judge. I'll just, I'll go that far. And I will say that, um, the way that... So you have to, I think that the ordinary person would distinguish between telling a girl she's pretty and soliciting her for sex. I just think that that's a distinction that's got to be made. And it takes it from a concrete, you know, from a, from these vague rumors of stuff going on. You know, my grandpa would tell a little girl, oh, you're a pretty little girl. Or, oh, can I buy you a Coke or give you a piece of candy? You know...  But there's more than that. I mean, even on the 14th of August... That's true. We have a Washington Post article with the title, Woman Says Roy Moore Initiated Sexual Encounter When She Was 14, He Was 32. And that was Lee Corfman. That's right. And that was my, my first distinction, Judge. Those were rumors, those were allegations made that were unsupported from women that were 40 years previously. As opposed to somebody back then, when Judge Moore was there 40 years ago, actually disciplined him for doing something bad. What if the ad had not referenced Santa's helper and simply said Roy Moore solicited sex from someone who was 14? Would that have been actionable in light of the Washington Post story? I think if you eliminate the identifiable person that makes it basically a verified claim, then, then that, you know, then there's more doubt that it could be actionable. What evidence are you relying on other than the ad itself that S&P intended the ad to communicate that Moore solicited sex from Miller? If you look at the research checklists that they did, when they insert... You're relying on the ad, you're relying on the exhibit that shows they were fact-checking. What other evidence, which is going to actual malice, are you... Right. Going to actual malice and, and the demeanors of the witnesses before the jury, Your Honor. But, but we, we, we have the Bose Supreme Court case that opposing counsel mentioned that said simply disbelieving her client's witnesses, that said, we didn't intend it. Disbelieving it doesn't mean that that supports that they did intend it. And I understand. But if you, you have to combine the demeanor of the witnesses and the credibility... You know, Judge Mays did an excellent job of parsing this out. In his 104 page, excellently written opinion. And what he said is you have to combine those credibility calls and give the jury the benefit of deference on those calls together with the undisputed facts to get to actual malice. Speaking to, speaking about the district court, what about the district court declined the invitation of S&P to clarify on the jury form which false statement was at issue? Um, Judge, actually, if you were there, I think it would be inconsequential. I think, I think literally it was inconsequential. I think that the jury knew from the moment we showed them the ad the very first time and said, this is the statement. This is the statement we're talking about. More, the, the first two lines, they were put together. And we, you know, that was told from the very beginning. This is the statement that we're contesting. And I, I don't think it could have been any clearer. Well, you spent a lot of time contesting whether or not there was a mall ban. What if the, couldn't the jury have found that the false statement was that, oh, he really wasn't banned from the mall? Except that it was easier when you had the actual witness, Wendy Miller, there at court saying, he never sexually solicited me. And she said, he never touched me offensively. He never looked at me funny. I was never offended by anything he did. The statement was uncategorically deemed to be false. But that, that doesn't answer Judge Ramsey's question. I'm sorry. There was, there was evidence. You put evidence in. We put evidence. The mall ban didn't even happen. That's right. How do we know that that wasn't the thing that the jury found was false? I, I think that you have to assume that they found both of those things false, Judge. I think that you have to assume they found both of those things false. They put on evidence that the mall ban was there. We put on evidence that the mall ban was not there. The jury made a credibility call. And I think that you have to assume that the jury found that both of those things were false in order for them to have come to a conclusion that they did. What about the fact that the jury form didn't ask about S&P's intent in publishing the ad? Is that error? So they had to ask, and Judge gave specific instructions on what actual malice was. And I think his instructions on actual malice and their answer to the jury form about whether or not it was proven by clear and convincing evidence that actual malice was there. And he, he, he spelled it out very carefully. His instructions are very long and they were actually modified by S&P to include the language that they wanted specifically regarding the question about Wendy Miller. So that modification was made at their request. And Wendy Miller's issue was specifically addressed to the jury in the form of those questions and Judge, the Judge made it extremely clear. At any rate, you have to combine all of the factors to get actual malice, and we do. Go to those, those research, there are several little sheets of evidence that they have about their research and where they inserted in between those phrases, when he approached. If that does not denote the intent of them to link that phrase, because the phrase by itself is almost meaningless. When he approached, linking the two lines of the first two lines of the, of the, of the, of the ad, putting that in there, just like in the Mason case, makes it a completely different statement, materially different, and, and makes it a statement that's qualitatively different from the other things that have been alleged. You know, the other allegations by Kaufman and Nelson, those were not getting any traction. They had to continue to go out. So they found another girl and said, oh yeah, he asked me for a date. And another girl would say, oh yeah, he told me I was pretty. And they had to find... What would you say is the, what is the gist of the news reporting about Moore that had occurred before the ad? May I get a little sip of water?  So I argued about this in the closing argument. And really, you've got to remember at all times that this is a political campaign. And these things, but, but the gist of everything before this particular article about the mall ban and the specific person being involved was that, you know, there were these attacks, basically attacks that were made. And then there were some other girls that were sort of lumped in with those attacks. The gist was Roy Moore's a bad guy. He's attracted to little girls. I would say there were two instances where he was alleged to be a sexual predator. And the other instances were more or less innocent transactions that were lumped together in the press for the specific purpose of attacking this candidate. But that's so, so here's the thing. They tried to make that the gist. I don't think that was the true gist if people read the articles. Yes. The key word being their stories, stories, as opposed to a verified mall ban with a specific person where he was disciplined, where these stories aren't coming forward after 40 years. This happened to judge more supposedly 40 years ago. For defamation. So we are looking at the news report. I understand, Judge. To judge prior's question, if we have the gist of all of these reports that Roy Moore is a sexual predator on young girls, how my question is to go back to material falsity. If we in fact know there was a there was an allegation of sexual assault or at least sexual behavior with a 14-year-old, how is it materially false? Even if, you know, the ad very clearly said one of the girls that he solicited for sex was a 14-year-old working as Santa's helper. Is that materially false? If all of the allegations are out there that it was underage girls and there are some sexual acts happening between him and the girls? Judge, the material falsity. The material falsity is that, you know, this it's the difference between allegations being brought from 40 years ago and an actual event happening 40 years ago that concluded that Judge Moore was bad. In other words, you know, you could I mean, I suppose under your logic, Judge, 100 people could have come and they could have said 100 other people who he had no contact with, never spoke to, never said anything to. They could just say, oh, yeah, he attacked that person, too. Oh, he attacked that person, too. Name them and name Judge Moore. And that would be inconsequential. You're combining some things here. You're arguing whether the mall ban, whether these allegations against your client are true, but on some level, because they've been reported, SMP can make that those statements in the ad. And as the district court judge said, it's non-actionable because like the mall ban, we don't have to look into whether that was really true. It was being reported. So SMP citing that report is non-actionable. That's right. But they didn't cite any report to come up with the statement that they came up with in this ad. And this ad made an impact. And that's what the jury found, Judge. You kind of are back to my question, which how does it make an impact if we have Ms. Korfman, who has said, when I was 14 years old, he had made sexual contact with me. And now the ad is referencing another 14-year-old. Is there any material difference? Yes. There's a material difference, Judge, and I'm not sure how I can explain this. There's a material difference between someone coming forward after 40 years with no corroboration during the last days of a campaign, that person coming forward, and someone saying, oh, no, we knew he was bad 40 years ago, and here's the proof. That's the difference. And it's a huge difference and made a huge impact. Thank you. We understand your argument. Thank you. Thank you, Your Honors. Moore's argument, as we just heard, is an extensive exercise in missing the forest from the trees in at least three important ways. First, you hear counsel talk about the allegedly innocent actions with respect to Wendy Miller when he approached her, told her she was pretty, offered to buy her Cokes, and flirted with her. Your Honor, there is absolutely no implication anyone could draw from reading the original Washington Post article or any of the news stories where Wendy Miller was one of a string of women who accused Roy Moore of inappropriate sexual advances upon them when they were teenage girls. There is no reasonable implication that that was an innocent or an innocuous interaction, only when you take it entirely out of the context. And, of course, it is the full context that this Court has to examine when looking at the actual malice standard. Can counsel come up with that kind of a derivation? But there is, honestly, the only reckless implication anybody could draw from reading these news stories is that that approach and that transaction was somehow innocent. Counsel also conflates the, again, misses the floor from the trees with respect to the false implication versus the gist of the ad. As I mentioned earlier, the mere fact that there was an imprecise word choice does not amount to actual malice. The Supreme Court has said in Bose that doing so would eviscerate the breathing space that actual malice requires. And it's further said that the statement in that case, like the statement in this one, represents the sort of inaccuracy that is commonplace in the form of robust debate in which the New York Times v. Sullivan rule applies. And, in fact, we know it is commonplace because if you look at this Court's very opinion from last year in Moore v. Cecil, in which it affirmed dismissal of Moore's many other defamation claims, this Court used precisely the same word choice that Moore alleges was defamatory in SMP's ad. At the top of the background section, the Court opinion notes that Moore's, it first notes Moore's encounters with young girls at a local Alabama shopping mall. And then it states in the next sentence, quote, one of these women, Lee Corfman, alleged that when she was 14, Moore had inappropriately touched her. Now, in fact, we know that Moore did not encounter Lee Corfman at the mall, but instead outside of her parents' custody hearing at the courthouse where he worked. But at the end of the day, the gist of this Court's factual recounting of all the reports in the record, just like the gist of SMP's ad, is the same, regardless of whether the 14-year-old was at the mall or anywhere else. And ultimately, Your Honor, what you heard from the argument, what you read in the district court ruling, and what you read in the briefs on behalf of Roy Moore is essentially this equating of falsity with actual malice. Because ultimately, the worst thing, and really the only thing counsel has been able to point to, and the district court was able to point to, is this alleged, this false implication of whether Moore actually solicited, expressly solicited sex from Wendy Miller when she was working as a Santa's helper. But the entire — even if we assume that that implication is false, and we're not here challenging the preponderance finding of falsity, even if we assume that is true, the entire body of actual malice case law, including the New York Times v. Sullivan case itself, is predicated on the finding that the publications at issue made inaccurate statements. In New York Times v. Sullivan, the Court said, that erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the breathing space they need to survive. But as this Court has said, as the Supreme Court and this Court have said time and again, we have required more than mere falsity to establish actual malice. The district court's order and Moore's argument on appeal would effectively convert the New York Times v. Sullivan actual malice standard into a strict liability regime, under which publishers and political opponents can be penalized to the tune of millions of dollars and years of resource expenditures based on a grammatical parsing of whether a single word in a 30-second ad might imply something about a public figure other than the literal and express accuracy. That is decidedly not the law. And if anything, Your Honors, this case exemplifies why that actual malice standard exists. It's precisely so that we don't have to spend years in court parsing word for word minor inaccuracies when discussing a public figure. And particularly here, where there is absolutely no evidence of my client's subjective intent or serious doubt on the part of the defendant. And there's affirmative evidence that my client did everything they possibly could to vet, to understand, to speak with the television companies. There really is just no evidence at all that satisfies any standard, let alone the very demanding, clear, and convincing burden that plaintiff has here. We respectfully ask that the Court reverse. Thank you, Your Honors.